UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ERIN MOSIER,

                            Plaintiff,

        -against-

THE STATE UNIVERSITY OF NEW YORK,
STONY BROOK UNIVERSITY, and
LAWRENCE FROHMAN, Ph.D., individually,

                            Defendants.
------------------------------------------------------X

**MEMORANDUM & ORDER**
18-cv-6539 (SJF)(AKT)

FEUERSTEIN, District Judge:

I.    <u>Introduction</u>

       Plaintiff Erin Mosier ("Plaintiff" or "Mosier") commenced this civil action against defendants The State University of New York ("SUNY"), Stony Brook University ("Stony Brook"; together with SUNY, the "SUNY Defendants"), and Lawrence Frohman, Ph.D., individually ("Frohman"), alleging sexual discrimination in violation of Title IX, 20 U.S.C. § 1681, *et seq.*, N.Y.S. Executive Law §§ 296(4) and (6), and N.Y.S. Civil Rights Law § 40-c(2). (*See* Amended Complaint, ECF No. 30.)  Presently before the Court are: Frohman's motion seeking the dismissal of the causes of action against him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereafter, the "Frohman MTD" (*see* ECF No. 35); *see also* Frohman Support Memo (ECF No. 35-4)); and, the SUNY Defendants' motion seeking dismissal of the action pursuant to Rules 12(b)(1) and (6) of Federal Rules of Civil Procedure (hereafter, the "SUNY MTD" (*see* ECF No. 37); collectively with the Frohman MTD, the "Dismissal Motions"); *see also* SUNY Support Memo (ECF No. 37-1)).  Plaintiff opposes the Dismissal

Motions.  (*See* ECF Nos. 35-6 and 37-3[1] (hereafter, the "Opposition" or "Opp'n").)  For the

following reasons, the Dismissal Motions are granted in part and denied in part.

II.    Background

    *A.  Factual Allegations*[2]

    "SUNY is the largest comprehensive university system in the United States with 64

institutions serving nearly 1.3 million students."  (Amended Complaint, ¶5.)  Stony Brook is a

SUNY institution located on Long Island, New York.  (*See id.* at 6.)  It received and continues to

receive federal financial assistance.  (*See id.* at ¶50.)

    After receiving an Associate's Degree in Adolescent Education from Nassau Community

College in the Spring of 2015, graduating with a 3.3 grade point average ("GPA") (*see id.* at

¶10), Plaintiff continued her education at Stony Brook, participating in its Social Studies

Education Program (hereafter, the "Program"), of which Frohman was a Director and whose

classes Mosier attended from September 2015 through May 2018.  (*See id.* at ¶¶8, 12.)  Frohman

was the Program's sole undergraduate advisor.  (*See id.* at ¶12.)

    "Within weeks of attending . . . class taught by Frohman, Frohman began a campaign of

demeaning and degrading sex discrimination against Mosier, including both private statements

---

[1]  Although assigned two docketing numbers by the Court's Electronic Case Filing (ECF) system, Plaintiff submitted one opposition brief to both Dismissal Motions.  (*See* Heller Decl. (ECF No. 35-5), ¶2 ("Given the overlapping issues presented in Defendants' two [Dismissal M]otions, Moiser believes that one Brief is the most efficient method to address those issues."); *see also* Opp'n at (unnumbered) 1 (same).)  Indeed, Plaintiff styled his Opposition as a "Combined Memorandum of Law in Opposition".  The double submission of the Opposition occurred to comply with the undersigned's "Bundle Rule" (*see* SJF Individual Rule 4(B), *available at* https://img.nyed.uscourts.gov/rules/SJF-MLR.pdf).

[2]  The factual allegation s in the Amended Complaint are assumed to be true for purposes of this Memorandum & Order; they do not constitute findings of fact by the Court.

made during office hours and public humiliation during class . . ." (*Id.* at ¶14.)  For example,

Plaintiff alleges Frohman stated:

● "You are nothing but a pretty face;"

● "All you are is a dumb blonde;"

● "You will only get positions in life if you use your body" and "you should be thankful for your looks;"

● Telling Mosier during office hours that she "talks too much" and that her mouth should be used "for something else" and that "all women should use their mouth for men's pleasure;"

● Degrading Mosier when she got an answer wrong by saying, "It's not your fault you are a woman and can't help yourself but be wrong;"

● "You will only make it in life if you marry rich;"

● One day when Mosier asked Frohman to explain an issue after class, he responded by saying, "Can you get through all of your blonde?"

● "Women have no right being in the workplace;"

● "This is not a place for women;"

● "Women are incompatible;"

● Making Mosier so uncomfortable with her appearance that she changed her hair color from blonde to brown;

● Saying to Mosier in front of the entire class when she walked in a few minutes late, "Look, the delinquent has joined us," which he would not have done to the male students;

● Making comments about Mosier's looks and gender when she attended Frohman's office hours to ask questions about the Program or creating her schedule;

● Silently approaching Mosier while she was reading or listening to her headphones in the hallway of the Social and Behavioral Sciences ("SBS") building, where the Program was located and where Frohman had his office, and standing over her until she noticed his presence, which was frightening to Mosier, and which Frohman did so frequently that Mosier stopped going to the SBS building;

3

● Blatantly favoring male students over female students by, among other things, allowing the male students to work independently while Mosier and the one other female student in his class had to work together, as if the female students were not able to complete work on their own;

● Giving better grades to male students based on gender, as demonstrated by the fact that Mosier and a male student did their work together and checked each other's work, yet the male student consistently received a higher grade than Mosier, and Frohman stated that he "grades based on feelings;"

● Making class so frightening and hostile that after class one evening when Frohman called Mosier to return to the classroom, Mosier became frozen with fear and only returned after a male friend offered to accompany her, and the issue was merely that Mosier had left her water bottle in the classroom;

● Making so many sexual comments to Mosier during office hours that she became so uncomfortable that she made an excuse to leave, even though Mosier was required to attend Frohman's office hours since he was the Program's sole advisor, either to select classes or to go over Mosier's work;

● Emailing Mosier at the end of the Fall 2016 semester and telling her to drop out of the Program, that he did not see a way for her to complete the Program and that she would not graduate as a teacher, which was devastating to Mosier;

● When Mosier brought her mother to meet with Frohman following that email, demeaning Mosier by saying, "I see you brought your mommy with you" and dismissing Mosier as having a learning disability, saying to Mosier, "I don't understand learning disabilities and why can't you just deal with it;"

● Saying to Mosier in front of her mother, "You have to prove to me you are not just an air head dumb blonde with a pretty face;"

● Showing Mosier a list of grades at the end of the semester and all the male students had A's and B+'s, while the female students had C's and D's;

● Intentionally embarrassing Mosier in class by asking a male student his opinion about a topic and then asking Mosier her opinion, after which Frohman kept asking Mosier "Why?" and began to explain why the male student was right and she was wrong, and when Mosier explained that she simply had a different

4

opinion from the male student, Frohman said in front of the class, "I'm not going to have another 3-hour go around meeting with you and your mother about your learning disability," which caused another student to say, "Why is Frohman hating extra on Erin today?"

● Continuing to make comments in class about Mosier's looks and body, including calling her a "dumb blonde" in front of her peers;

● Making sexual comments and comments that put down women, including talking about how he enjoys oral sex and using the term "blow job" while standing over Mosier and looking at her;

● Asking the class to identify a picture on the chalkboard and when Mosier, with permission, went to the front of the room to get a closer look and realized what the image was, hitting Mosier across the arm and saying, "Don't say what it is or I'm going to slap you across your ass for not being a good girl;"

● Responding to Mosier's email requesting a meeting with Frohman, "Say please . . ." which he would not have done to a male student;

● When Mosier finally broke down and told Frohman that she was going to drop the Program because her work was never going to be good enough, saying, "Do I make you feel this way?" and when Mosier said yes, convincing Mosier to remain in the Program, yet demeaning her in the same meeting by throwing books and balls at her and saying, "You have the attention span of a gnat" and "You are worse than my wife and dog combined."

(*Id.* at 3-6, ¶14.) These examples show "how Frohman created an environment that was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe and/or pervasive to alter the conditions of Mosier's educational environment." (*Id.* at 7 (concluding sentence of ¶14).) In another incident on April 12, 2017, when Plaintiff was presenting a lesson plan in class (hereafter, the "Presentation Incident"), Frohman acted in a belittling and confrontational manner prompting other students to tell Frohman to "back off" and that he was making Plaintiff "uncomfortable", with another student taking a photo and posting it to social media with the caption "Creepy ass professor." (*Id.* at ¶17.)

5

Following the Presentation Incident, Mosier complained about Frohman's behavior to Professors Sara Lipton, Ph.D. ("Lipton") and Paul Gootenberg, Ph.D. ("Gootenberg"). (*See id.* at ¶¶18-19.) "At the start of the meeting, Gootenberg stated, "I don't mean to sound cynical, but what did [Frohman] do now?'" (*id.* at ¶20 (emphasis omitted)), and continued by stating, "'You are like the fifth person this semester to come to me about Professor Frohman[,] and I heard and know things about him, but this is just way out of hand and I can't keep covering for him.'" (*Id.* at ¶22 (emphasis omitted).) Thereafter, on "April 28, 2017, Mosier had a meeting with Stony Brook's Title IX [O]ffice that lasted approximately two hours" (hereafter, together with Mosier's complaint to Lipton and Gootenberg, the "Frohman Complaint"). (*Id.* at ¶24.) Plaintiff alleges Stony Brook responded to her Frohman Complaint in the following manner:

> ● Taking six months to complete its investigation, even though the Title IX office initially told Mosier that the investigation would be just 60 days;
>
> ● Consistently avoiding Mosier when she called the Title IX [O]ffice, so that she had no idea what was occurring with her complaint;
>
> ● Telling Mosier that Stony Brook came up with a "safety plan," although the "plan" was merely for Mosier to call 911;
>
> ● When Mosier protested that Stony Brook was not taking action to ensure her safety, the Title IX representative said it would conduct a meeting with Mosier, her parents, the Title IX [O]ffice and University Police, and when the meeting finally occurred on August 29, 2017, just days before the fall semester was to begin, the University Police had no idea why they were there and Stony Brook's Title IX's representative only response was to say, "We cannot guarantee your safety."

(*Id.* at 9, ¶25 (emphasis removed).) In addition to exemplifying deliberate indifference, Plaintiff further alleges these responses were "clearly unreasonable in light of the known circumstances" and demonstrated that "Stony Brook ratified and approved Frohman's conduct." (*Id.* at 10 (concluding sentence of ¶25).)

Moreover, Plaintiff alleges that "Frohman's egregious sex discrimination . . . had a devastating impact on her emotional well being and confidence," causing her: "to suffer depression and difficulty sleeping;" GPA to fall from 3.3 when she graduated from Nassau Community College to 2.75 at Stony Brook, which lower GPA "prevented her from being a student teacher . . . , which was a pre-requisite to Mosier completing the Program and becoming a teacher"; "to suffer panic attacks and anxiety that required her to miss classes and avoid office time with other professors" "when she was required to see professors in the same building where Frohman's maintained his office;" and "to seek counseling for the distress and anxiety she continued to suffer." (*Id.* at ¶¶27-30.)

To fulfill her student teaching pre-requisite, Mosier needed a waiver of the GPA requirement and was informed that Frohman and Professor Charles Backfish ("Backfish") made such waiver determinations. (*See id.* at ¶30-¶31.) Instead, Plaintiff "spoke with Interim Associate Dean of Students Ellen Driscoll ("Driscoll"), who told Mosier that providing a waiver under the circumstances was an 'easy fix' and that she would speak with Associate Provost Richard Gatteau ("Gatteau")." (*Id.* at ¶32.) However, Gatteau would not provide the waiver, instead, *inter alia*, "pressur[ing] Mosier into leaving the teaching program" and "graduat[ing] with only a degree in History." (*Id.* at ¶33.) "[W]hen Mosier refused to withdraw from the Program, Gatteau became increasingly hostile towards her." (*Id.* at ¶34; *see also id.* at ¶¶36-37.) Backfish, whose office was next to Frohman's, was similarly unhelpful, refusing to "meet with Mosier in a neutral setting to discuss her being able to student teach, even though Stony Brook's Title IX Office had told Mosier that Backfish would be required to meet with her in a neutral location." (*Id.* at ¶35.) Ultimately, however, Plaintiff was able to student teach, albeit through another school. (*See id.* at ¶40.)

Mosier further alleges that despite her "repeated efforts to get information about the status of the investigation into her [Frohman C]omplaint[, she] was met with resistance and secrecy." (*Id.* at ¶39; *see also id.* at ¶36 (alleging that her September 28, 2017 correspondence to Gatteau, copied to Stony Brook's President, "complaining about Frohman's conduct and Stony Brook's ineffective response" went unanswered).) It was only on October 30, 2017 that Plaintiff "received a letter from Stony Brook's Title IX [O]ffice stating that the case was 'closed' and that Mosier's allegations had been substantiated,' yet she was not given any further information and was never told what the findings of Stony Brook's investigation showed or what penalty, if any, was taken against Frohman." (*Id.* at ¶ 41.) On December 18, 2017, Plaintiff "met with Labor Relations" "and after describing Frohman's sex discrimination of her, was told that Title IX had handled her [Frohman C]omplaint 'all wrong' and that it should not have taken six [months[3]] to complete the investigation, yet, thereafter, Labor Relations refused to have any further contact with" her. (*Id.* at ¶42.)

On May 18, 2018, Mosier attended commencement and graduated from Stony Brook. (*See id.* at 47.)

### B. Procedural History

On August 9, 2018, Plaintiff commenced this action in the Southern District of New York. (*See* Complaint (ECF No. 1).) By Stipulation and Order, the case was transferred to this Court. (*See* ECF Nos. 21 and 22; *see also* docket text accompanying ECF No. 1 ("[Transferred from New York Southern.]").) On December 28, 2018, Mosier's counsel sent the Office of the New York State Attorney General a letter notifying it of this action, including her claim pursuant

---

[3] While Plaintiff stated "weeks", read in the context of her entire Complaint, there can be no dispute that Plaintiff meant "months".

to N.Y.S. Civil Rights Law § 40-c. (*See* Amended Complaint, ¶76.) On January 10, 2019, Plaintiff filed her Amended Complaint (*see* ECF No. 30), asserting four causes of action:

> 1. a claim of sex discrimination in violation of Title IX against the SUNY Defendants (Amended Complaint, First Cause of Action, ¶¶49-57);
>
> 2. a claim of discrimination in violation of NYSHRL § 296(4) against the SUNY Defendants (Amended Complaint, Second Cause of Action, ¶¶58-64);
>
> 3. a claim of aiding and abetting in the discrimination that Stony Brook permitted Mosier to suffer, in violation of NYSHRL § 296(6), against Frohman (Amended Complaint, Third Cause of Action, ¶¶65-69); and
>
> 4. a claim of discrimination in violation of N.Y.S. Civil Rights Law §40-c against all Defendants (Amended Complaint, Fourth Cause of Action, ¶¶70-77).

The common theme in all of Mosier's causes of action is that Stony Brook had or should have had notice of Frohman's sex discrimination of Mosier, but it took no action to stop that discrimination and failed to adequately respond or investigate Mosier's Frohman Complaint. (*See* Amended Complaint, ¶¶52, 60, 72; *see also id.* at ¶66.) The Defendants seek to dismiss the Amended Complaint, which Plaintiff opposes. In support of her Opposition, Mosier attached a "copy of Frohman's bio as a 'Visiting Scholar' at Harvard University form September 1, 2018 through May 31, 2019" (Heller Decl. (ECF No. 37-2), ¶5 (citing Ex. B, *attached to* Heller Decl.)) and "[a]n article from the 'Stony Brook Independent,' Stony Brook's student newspaper, dated October 4, 2018, entitled 'Title IX Protests at State of University Address'" (*id.* at ¶6 (citing Ex. C, *attached to* Heller Decl.)). Supporting its Reply (*see* ECF No. 37-4), the SUNY Defendants attached, *inter alia*, a "copy of the Stipulation of Settlement of charges against . . . Frohman, setting forth the penalties he agreed to, regarding Plaintiff's internal complaint against him" (Logue Reply Decl. (ECF No. 37-5), ¶5 (citing Ex. A, *attached to* Logue Reply Decl.)) and a "copy of excerpts of the collective bargaining agreement regarding the United University Professionals, of which . . . Frohman is a member, relating to disciplinary proceedings against its members" (*id.* at ¶6 (citing Ex. B, *attached to* Logue Reply Decl.)).

*C. The Parties' Positions*

    1.  <u>The SUNY Defendants' Arguments</u>

As to Plaintiff's federal claim, the University Defendants argue that Mosier cannot make out a Title IX cause of action because her own allegations undermine that claim. (SUNY MTD at 7.) That is, despite claiming that Stony Brook: had or should have had notice of Frohman's sex discrimination; took no action to stop said discrimination; and failed to adequately respond to or investigate the Frohman Complaint, Mosier alleged "only that she was not 'given any further information'" regarding the investigation and, since she also alleged having received a letter from Stony Brook's Title IX Office informing her that her Frohman Complaint had been "substantiated," albeit six months after the Frohman Complaint, she has conceded the SUNY Defendants "timely, actively and adequately investigated" said Complaint. (*Id.* at 8 (citing Amended Complaint, ¶¶41, 42.)

Regarding Plaintiff's state law claims of violations of NYSHRL § 296(4) and NYSCRL § 40-c, the SUNY Defendants ask this Court to decline exercising pendent jurisdiction over those claims because Mosier cannot establish the requisite federal jurisdiction needed upon which to base supplemental jurisdiction. (*See id.* at 9.) Alternatively, they argue that: as to Plaintiff's § 296(4) claim, Plaintiff "has failed to allege that the [SUNY] Defendants somehow authorized, condoned, or acquiesced to . . . Frohman's discriminatory conduct toward Plaintiff" and because she has not made this "more stringent showing," she has failed to state a claim pursuant to § 296(4) (*see id.* at 10); and, as to Mosier's § 40-c claim, because Mosier failed to comply with the corresponding mandated notice requirement of § 40-d, as conceded by her own allegation (*see* Amended Complaint, ¶76), dismissal of her § 40-c claim is required. (*See* SUNY MTD at 12-13.)

### 2. Frohman's Arguments

Frohman argues that Plaintiff's aider and abettor claim against him should be dismissed as a matter of law since Plaintiff alleges that only Frohman discriminated against her, but he cannot aid and abet his own conduct. (*See* Frohman MTD at 2, 4-7.) He also notes that this claim "must be dismissed in the absence of any liability on the part of his employer, SUNY." (*Id.* at 7, note 1.) As to Plaintiff's § 40-c state civil rights claim, Frohman contends that since Mosier did not comply with the statute's predicate notice requirement of notifying the N.Y.S. Attorney General of this claim at or before the commencement of this action, that noncompliance requires dismissal of the claim. (*See id.* at 2, 7-8.) Indeed, according to Frohman, in her Amended Complaint, Mosier "concedes that she failed to comply with section 40-d." (*Id.* at 8 (citing Amended Compliant at ¶76).)

### 3. Mosier's Opposition

#### (*a*.) *Regarding Plaintiff's Title IX Cause of Action*

Mosier argues that, from Gootenberg's comments, it was clear that Stony Brook was aware Frohman had the potential to abuse students, which, at the pleading stage, is sufficient to survive a dismissal motion. (*See* Opp'n at 11-12.) Moreover, she contends that her allegations plausibly assert that Stony Brook's response to her Frohman Compliant exhibited deliberate indifference and that she should be afforded the opportunity to conduct discovery to determine "what action, if any, Gootenberg took in response to Mosier's [Frohman C]omplaint" and "what action Stony Brook's Title IX Office took in response to Mosier's" April 28, 2017 meeting with the School's Title IX representatives while she "remained exposed to Frohman, who was the sole undergraduate advisor for the Program." (*Id.* at 13.) Moreover, because she "was required to go to the building where Frohman maintained his office," she "suffer[ed] panic attacks and

avoid[ed] office time with other professors." (*Id.*)  Further, the School also exhibited deliberate indifference to Mosier's Frohman Complaint when, among other things, it "failed to intervene" in assisting her to procure a minimum-grade waiver in order to student-teach, which waiver: was necessitated by Mosier's fallen GPA "due to Frohman's discrimination and Stony Brook's ineffective response;" and, was overseen by Frohman.  (*Id.* at 14.)  By way of example, Mosier highlights, *inter alia*:  Backfish's "refus[al] to meet with Mosier in a neutral setting to discuss her being able to student teach;" Driscoll's initial assurance that securing a waiver would be an "easy fix" followed by "suddenly stop[ing] speaking to Mosier;" and, Gatteau's: trying to convince Mosier to leave the Program; hostility towards Mosier; and, ultimate dismissal of Mosier when she refused to leave the Program.  (*Id.* at 14-15 (citing Amended Complaint, ¶¶32-34, 36-37)).  In sum, Plaintiff argues that the finding of the Frohman Complaint to be "substantiated" should not insulate the School from liability for its ineffective response.  (*See id*. at 15 (citing *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 668 (2d Cir. 2012)); *see also id.* at 16 ("Stony Brook should not be permitted to use its failures to apprise Mosier of what was happening as a sword to dismiss her case.").)  Plaintiff asserts that a jury should "consider Stony Brook's efforts to force Mosier out of the Program following her [Frohman C]omplaint."  (*See id*.)

(*b*.)  *Regarding Plaintiff's § 296(4) Cause of Action*

Similarly, Plaintiff argues that her Amended Complaint contains sufficient allegations plausibly asserting a § 296(4) claim under the NYSHRL.  (*See id.* at 17.)  In particular, Gootenberg's comments, *i.e.*, that Mosier was "like the fifth person this semester to come to me about . . . Frohman"; "this is just way out of hand;" and "I can't keep covering for [Frohman]," demonstrate that Stony Brook condoned Frohman's sex discrimination.  (*Id.*)  Such condonation

is also exhibited by the School's "failing to conduct a timely investigation, keeping the results and any action against Frohman secret[,] and permitting a private investigator to use class time to help assist Frohman," which allegations surpass the minimal requirements for setting forth a § 296(4) claim.  (*Id.* at 18 (citing *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp.3d 497, 522 (E.D.N.Y. 2014)(discussing an employer's condonation of its employee's actions subjected employer to NYSHRL liability).)

### (*c.*) *Regarding Plaintiff's § 296(6) Cause of Action*

In essence, Mosier asks the Court to reject Frohman's reliance on cases which stand for the proposition that an individual cannot be held liable for aiding and abetting his own predicate actions as doing so "would create a loophole in the law that shields the primary perpetrator of discrimination."  (*Id.* at 21.)  Instead, she argues that the Court should follow the Second Circuit's *Tomka* precedent, *see* 66 F.3d 1295 (2d Cir. 1995), which was reaffirmed in *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (*see id.* at 18), *i.e.*, that an individual may be held liable for aiding and abetting allegedly unlawful discrimination by his employer even where his actions serve as the predicate for the employer's vicarious liability (*see id.* at 19 (collecting cases)).

### (*d.*)  *Regarding Plaintiff's §40-c Cause of Action*

In response to the Defendants' arguments that Mosier failed to provide the requisite § 40-d notice, Mosier argues that because she served her original Compliant upon Stony Brook and SUNY, who are both represented by the Attorney General, the Defendants were "provided notice of this action at its commencement."  (*Id.* at 22.)  She further contends that by sending her December 28, 2018 letter to the N.Y.S. Attorney General "so that there could be no question that the Attorney General's office [wa]s aware of this action," she has satisfied § 40-d.  (*Id.*)

Alternatively, and relying upon other New York State notice-of-claim statutes, *i.e.*, under New York State's General Business Law and Labor Law, Mosier argues this Court should find that "serving notice upon the Attorney General should not be a jurisdictional prerequisite." (*Id.* at 25.)

III.   Discussion

    *A.  Rule 12(b)(6) Dismissal Standard[4]*

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate pleading standard, setting forth a two-pronged analysis to be used in deciding Rule 12(b)(6) dismissal motions.  First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *id.* at 679, since, although they "can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).  Indeed, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the wrongdoing alleged, *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

---

[4]  *See infra* at notes 6 and 7.

*Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010)); *see also Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 190 (2d Cir. 2012) ("[O]n a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [the plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder.").

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the pleading, which are accepted as true; to matters of which judicial notice may be taken, such as publicly available agency documents, *see, e.g. In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at * 4 (E.D.N.Y. Aug. 29, 2013) (citing cases); to any written instrument attached to the pleading as an exhibit pursuant to Rule 10(c) of the Federal Rules of Civil Procedure; to statements or documents incorporated by reference in the pleadings; or to documents upon the terms and effect of which the pleading "relies heavily" and which are, thus, rendered "integral" thereto. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016); *Smith v. Hogan*, 794 F.3d 249, 254 (2dCir. 2015); *Tubbs v. Stony Brook Univ.*, No. 15-cv-517, 2016 WL 8650463, at * 4 (S.D.N.Y. Mar. 4, 2016).

*B. The Instant Case*

In deciding the Dismissal Motions, the Court is limiting itself to the facts alleged in Mosier's Amended Compliant, declining to consider any of the matters attached to Mosier's Opposition or to the SUNY Defendants' Reply as none of those attachments were attached to Mosier's Amended Complaint in accordance with Federal Rule of Civil Procedure 10(c), they are not incorporated by reference into Mosier's Amended Complaint, and they have not been relied upon, let alone heavily relied upon, in drafting the Amended Compliant and, therefore, cannot be considered integral to said Complaint. (*See supra* at p.15 (discussing the items a court may consider when deciding a Rule 12(b)(6) dismissal motion).)

1.  Regarding Plaintiff's Title IX Cause of Action

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity *receiving Federal financial assistance*." 20 U.S.C. § 1681(a)(emphasis added). Title IX "has . . . been recognized as . . . encompassing teacher-on-student hostile educational environment sexual harassment." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003)(citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 65-66 (1992)); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88-89 (2d Cir. 2011)(Title IX affords "a remedy to a student who is subjected to sexual harassment by a teacher or professor at an educational institution receiving federal funds"). "[A] Title IX hostile education environment claim is 'governed by traditional Title VII 'hostile environment' jurisprudence." *Papelino*, 633 F.3d at 89 (quoting *Hayut*, 352 F.3d at 744); *see also Irrera v. Humpherys*, 695 F. App'x 626, 628 (2d Cir. 2017) (quoting *Papelino*, 633 F.3d at 89).

"To establish harassment sufficient to create a hostile educational environment that would violate Title IX, a plaintiff must show that the harasser's 'conduct created an educational environment sufficiently hostile as to deprive [her] of 'access to the educational opportunities or benefits' provided by [her school],' and [s]he must show that the institutional defendants had actual knowledge of the harassment and failed to respond." *Wolff v. State Univ. of N.Y.*, 678 F. App'x 4, 6-7 (2d Cir. 2017)(quoting *Hayut*, 352 F.3d at 750 (quoting *Davis*, 526 U.S. at 650)); *cf., Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012)(in context of Title VI case,[5] stating that "[d]iscriminatory actions [are those which] restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the school system," and that "[e]ducational benefits include an academic environment free from [unlawful] hostility" (omitting internal quotation marks and citations)). More specifically:

> [f]or an educational facility to be liable, . . . the plaintiff must establish that a school official with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination and failed to adequately respond. *Gebser* [*v. Lago Vista Indep. Sch. Dist.*]*,* 524 U.S. [274,] 290, 118 S. Ct. 1989 [(1998)]. A school fails to adequately respond if it provides no response or if it provides a response that "amount[s] to deliberate indifference to discrimination." *Id.*

*Papelino*, 633 F.3d at 89. "Deliberate indifference may be found both 'when the defendant's response to the known discrimination 'is clearly unreasonable in light of the known circumstances,'"" *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)(quoting *Davis*, 526 U.S. at 648, 119 S. Ct. 1661), and when remedial action only follows after 'a lengthy

---

[5] *See, e.g., Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-98 (1979)(instructing that Congress intended Title IX would be interpreted and applied in the same manner as Title VI); *Alexander v. Choate*, 469 U.S. 287, 294 (1984) (instructing that the same analytical framework should generally apply in cases under Title IX, Title VI, and Section 504 of the Rehabilitation Act of 1973 since all three statutes contain parallel language).

and unjustified delay,' *Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 761 (2d Cir.

1998)." *Hayut*, 352 F.3d at 751.

> In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274
> (1998), a case involving a sexual relationship between a teacher
> and an eighth-grade student that was not reported to school
> officials, the Supreme Court held that "a damages remedy will not
> lie [against a school district] under Title IX unless an official who
> at a minimum has authority to address the alleged discrimination
> and to institute corrective measures on the [federal funding]
> recipient's behalf has *actual knowledge* of discrimination in the
> recipient's programs and *fails adequately to respond.*" 524 U.S. at
> 290 (emphasis added). "Deliberate indifference" or "an official
> decision by the recipient not to remedy the violation" constitutes
> an inadequate response. *Id.* at 290-91. The Supreme Court has
> "declined . . . to impose [Title IX] liability under what amount[s]
> to a negligence standard – holding the district liable for its failure
> to react to teacher-student harassment of which it knew or *should
> have known.*" *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629,
> 642 (1999) (emphasis in original) (citing *Gebser*, 524 U.S. at 283).
> "The high standard imposed in *Gebser* sought to eliminate any
> 'risk that the recipient would be liable in damages not for its own
> official decision but instead for its employees' independent
> actions.'" *Id.* at 643 (quoting *Gebser*, 524 U.S. at 290-91).

*RF v. South Country Cent. Sch. Dist.*, No. 13-cv-2710, 2016 WL 5349782, at *8 (E.D.N.Y. Sept.

23, 2016).

Here, the well-pled facts establish that: the SUNY Defendants run educational programs

and receive federal financial assistance; Mosier was subjected to an academic environment that

was not free from unlawful hostility based upon her sex; and, that Stony Brook's Title IX Office

had actual knowledge of Mosier's Frohman Complaint. The open dispute is whether the SUNY

Defendants' response to the Frohman Complaint amounted to deliberate indifference, such that

they should be liable to Mosier pursuant to Title IX.

Plaintiff alleges that it took approximately six months before she was notified that her

Frohman Complaint had been substantiated, and that despite inquiries, she was not told the

results, if any, of the School's Title IX Office's investigation into the Frohman Complaint. (*See* Amended Complaint, ¶¶25, 41, 42.) In other words, Plaintiff is arguing that the School's response was inadequate, which finding would support her claim of a Title IX violation. While recognizing Mosier's contention is that the investigation was not conducted properly (*see* SUNY Reply at 3-4), the SUNY Defendants argue "Plaintiff alleges only that she received a letter from Stony Brook's Title IX [O]ffice six months after she made her [Frohman C]omplaint informing her that her allegations had been 'substantiated;' she does not allege facts demonstrating when the investigation by Stony Brook's Title IX office actually ended." (*Id.* at 4 (citing Amended Complaint, ¶41); *see also* SUNY Support Memo at 8 (arguing that Mosier's allegation regarding being informed that her Frohman Complaint had been "substantiated" is an admission that the SUNY Defendants "adequately and timely responded to her [Frohman C]omplaint").) Yet, that is the point: Plaintiff plausibly alleges that, despite her Frohman Complaint eventually being substantiated, her efforts to find out the status of the investigation, *i.e.*, to determine whether Stony Brook was adequately responding to said Complaint, were repeatedly rebuffed by Stony Brook, as it was non-responsive to her inquiries both before and after said substantiation. (*See* Amended Complaint, ¶¶33, 35, 36, 37, 39, 41, 42.) Simply acknowledging a Title IX complaint of sex harassment as being 'substantiated' is not the same is providing a *response* to that complaint. Yet, by the logic of the SUNY Defendants' argument, mere substantiation of a complaint would relieve them of any liability for failing to adequately respond to such a complaint. The Court rejects such an argument and finds that Mosier's factual allegations are enough "to raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 556, of her alleged Title IX violation, *i.e.*, Stony Brook's failure to adequately *respond* to her Frohman Complaint. Moreover, the fact that, in their Reply, the SUNY Defendants proffered

explanations for the length of time it took both to substantiate the Frohman Complaint and then supposedly to respond to it (*see* Reply at 4 (explaining, *inter alia*, that: the summer break impeded Stony Brook's initial investigation; once substantiated, the Frohman Complaint was "transferred to Stony Brook's Labor Relations Office;" and, the Labor Relations Office "was required to provide due process to . . . Frohman as required by the collective bargaining agreement")), but which evidence is not before the Court, underscores the open question regarding whether Stony Brook adequately responded to the Frohman Complaint and the need for discovery to answer that question. In any event, "on a Rule 12(b)(6) motion[,] it is not the province of the court to dismiss the complaint on the basis of [its] choice among plausible alternatives." *Anderson News*, 680 F.3d at 190. Rather, "[a]ssuming that [the plaintiff] can adduce sufficient evidence to support [her] factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* Accordingly, based upon Mosier's factual allegations in her Amended Complaint, it is plausible to inference that the SUNY Defendants are liable for violating Title IX by not adequately responding to the Frohman Complaint.

2. Regarding Plaintiff's § 296(4) Cause of Action

New York State's Human Rights Law provides, in relevant part, that:

> [i]t shall be an unlawful discriminatory practice for an educational institution * * * to permit the harassment of any student * * * by reason of his race, color, religion, disability, national origin, sexual orientation, gender identity or expression, military status, sex, age or marital status * * *.

§ 296(4). "The identical standards apply to . . . discrimination claims brought under . . . Title IX and New York Executive Law § 296." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000)(citations omitted).

While it is well-established that a court may *sua sponte* raise the issue of subject matter jurisdiction at any time, and that "[i]f subject matter is lacking, the action must be dismissed," *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000)(citations omitted), "[w]hether a state's sovereign immunity under the Eleventh Amendment presents a question of subject matter jurisdiction is an open question in the Supreme Court and the Second Circuit." *See Seitz v. New York State*, No. 18-cv-4149, 2019 WL 4805257, at *6, n.10 (E.D.N.Y. Sept. 30, 2019) (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998); *Carver v. Nassau County Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013)). Given the open nature of this jurisdictional issue in conjunction with the fact that the SUNY Defendants have failed to raise a sovereign immunity argument in support of their Dismissal Motion,[6] notwithstanding that "New York's sovereign immunity extends to the State University of New York system," *Wilkinson v. New York State*, No. 18-cv-4148, 2019 WL 5423573, at *7 (E.D.N.Y. Oct. 22, 2019)(citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)); *see also Mamot v. Bd. of Regents*, 367 F. App'x 191, 192-93 (2d Cir. 2010) (holding SUNY entitled to Eleventh Amendment immunity as an agency of the State of New York), and that "claims under the NYSHRL against SUNY and [its c]ollege[s] are barred by sovereign immunity" *Hauff v. State Univ. of N.Y.*, No. 18-cv-7256, 2019 WL 6498256, at *6 (E.D.N.Y. Dec. 3, 2019), the Court finds itself constrained to decline dismissing this claim upon jurisdictional grounds at this stage of the litigation.[7] Additionally, given that the same standard applies to Mosier's NYSHRL claim

---

[6] Although the SUNY Defendants discuss the Rule 12(b)(1) standard of review, they do not raise that as a basis for dismissing any of Plaintiff's causes of actions against them. (*See* SUNY Support Memo (ECF No. 37-1) at 3-4; *cf., id.* at Arguments I, II, and III.)

[7] The Court notes that, contrary to the instant case, in *Wilkinson* and *Hauff*, defendant SUNY specifically raised Eleventh Amendment arguments as a basis to dismiss the respective plaintiffs' NYSHRL claims. *See Wilkinson*, No. 18-cv-4148, Dismissal Motion Support Memo (ECF No.

as to her Title IX claim, for the reasons the Court declines to dismiss Mosier's Title IX claim, it also declines to dismiss her NYSHRL cause of action at this juncture.

### 3. Regarding Plaintiff's § 296(6) Cause of Action

> [Section] 296 is, in essence, an *employment* discrimination statute, not an individual liability statute, even though individuals can . . . be liable under some circumstances. "Importantly, since it is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting, a plaintiff cannot prevail against an individual on her state claims unless she can first establish the liability of her employer." *Pellegrini v. Sovereign Hotels, Inc.,* 740 F. Supp.2d 344, 356 (N.D.N.Y. 2010) (internal citations and punctuation marks omitted); *see also Jordan v. Cayuga County,* [No. 5:01-cv-1037,] 2004 WL 437459, *4 (N.D.N.Y. [Feb. 9,] 2004) (plaintiff may only recover under § 296(6) where she can show that defendant aided or abetted primary violation of NYHRL committed by another employee or the business itself).

*Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp.2d 89, 115–16 (E.D.N.Y. 2011) (emphasis in original).

Because, at this point in the case, the threshold determination regarding the SUNY Defendants' liability under § 296(4) remains an open issue, it is premature to dismiss Mosier's § 296(6) claim against Frohman. (*See* Frohman Reply at 4 (arguing, in the alternative, that the § 296(6) claim against Frohman "should be dismissed if the claims against [the SUNY Defendants] are dismissed because Frohman's aiding and abetting liability hinges upon that of his employer").) Similarly, it is not yet necessary for the Court to determine which of the parties' opposing arguments should prevail regarding the issue of whether a single individual, whose unlawful discriminatory conduct is the basis for NYSHRL § 296(4) claim, can aid and

---

20-5) at 9-10, 23); *Hauff*, No. 18-cv-7256, Dismissal Motion Support Memo (ECF No. 18-5) at 3). If Eleventh Amendment immunity is raised as an affirmative defense to Plaintiff's Second Cause of Action, the Court will rule on that defense accordingly.

abet his own conduct.  *See, e.g., Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp.2d 89, 115 (E.D.N.Y. 2011)(discussing § 296(6) aider and abettor liability when there is only one individual and that Second Circuit precedent regarding aider and abettor liability has not addressed such a fact scenario, but concluding that where there is no liability on the employer's part, any claim based upon § 296(6) must fail).  (*Cf., e.g.*, Opp'n at 18-21 (asserting that *Tomka* remains Second Circuit controlling precedent and implicitly arguing that it applies to all § 296(6) claims), *with* Frohman Reply at 2-4 (arguing that since he is the only named individual defendant, Frohman cannot aid and abet his own alleged unlawful conduct, thereby requiring dismissal of the § 296(6) claim against him and discussing cases that support this position).)

### 4. Regarding Plaintiff's §40-c Cause of Action

New York Civil Rights Law § 40-c provides that all persons within the State's jurisdiction are entitled to the equal protection of the State's laws and shall not be subject to any discrimination of his civil rights by, among others, "the state or any agency or subdivision of the state" because of, *inter alia*, his sex.  NYSCRL § 40-c(1)-(2).  Further, "[t]he notice provision of the statute states, in pertinent part, that '[*a*]*t or before* the commencement of any action under this section, notice thereof shall be served upon the attorney general.'"  *Cinquanti v. Tompkins-Cortland Cmty. Coll.*, No. 99-cv-1478, 2000 WL 949460, at *9 (N.D.N.Y. July 5, 2000((quoting NYSCRL §40-d (emphasis in original)).  (*See also* Frohman Reply (ECF No. 35-7) at 6 (collecting cases).)

In *Cinquanti*, the court dismissed the plaintiff's § 40-c claim because, although she "cured [her] pleading deficiency by amending her compliant to allege compliance with § 40-d, the fact remain[ed] that notice was not provided to the Attorney General 'at or before the commencement of [the] action.'"  *Id.*  Because "[c]ase law clearly states that '[f]ailure to []

23

comply with section 40-d mandates dismissal of a section 40-c claim,'" *id.* (quoting *Rivera v. Hertz Corp.*, 990 F. Supp. 234, 238 (S.D.N.Y. 1997), and collecting cases), the *Cinquanti* Court found "plaintiff's delay in providing notice of her § 40-c action mandate[d] dismissal of the claim." *Id.* This Court is presented with a nearly identical scenario.

Rule 3 of the Federal Rules of Civil Procedure makes clear that an action is commenced upon the filing of a complaint. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). There is no dispute that this action was commenced on August 9, 2018, when Mosier's original Complaint was filed. (*See* ECF No. 1; *see also* Amended Complaint, ¶3.) The fact that the Office of the New York New York State Attorney General subsequently filed a Notice of Appearance on behalf of the SUNY Defendants (*see* ECF No. 8), does not, as Mosier implicitly argues (*see* Opp'n at 22), cure her failure to provide notice of the action *at or before* the commencement of the action, as required by § 40-d. Further, Mosier's additional allegation in her Amended Complaint that she has provided the Attorney General with notice of her § 40-c claim via a December 28, 2019 letter (*see* Amended Complaint, ¶76) is equally ineffective to cure her noncompliance with § 40-d. *See Cinquanti*, 2000 WL 949460, at *9. Rather, because Mosier commenced this action on August 9, 2018 (*see* Amended Complaint at ¶3) but, did not provide the Attorney General § 40-d notice of her § 40-c claim until after the action's commencement (*see id.* at ¶76), Mosier's "delay in providing notice of her § 40-c action mandates dismissal of th[is] claim." *Cinquanti*, 2000 WL 949460, at *9; *see also, e.g., Peritz v. Nassau County Bd. of Coop. Educ. Servs.*, No. 16-cv-5478, 2019 WL 2410816, at *2 (E.D.N.Y. June 7, 2019)("'Notice of claim requirements are construed strictly' and '[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action.'"

(quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999)(internal quotation marks omitted)).

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that:

*A.* The SUNY Defendants' Dismissal Motion is granted in part and denied in part, with Plaintiff's:

    1. Fourth Cause of Action against the SUNY Defendants being dismissed, but the

    2. First and Second Causes of Action against the SUNY Defendants remaining;

*B.* Frohman's Dismissal Motion is granted in part and denied in part, with Plaintiff's:

    1. Fourth Cause of Action against Frohman being dismissed, but the

    2. Third Cause of Action against Frohman remaining;

*C.* By **February 3, 2020**, the Defendants are to serve and file their Answers to Plaintiff's Amended Complaint; and

*D.* The January 14, 2020 **Status Conference** is **adjourned to March 5, 2020**, at 11:15 a.m., in Courtroom 1010 of the Central Islip Federal Courthouse.


SO ORDERED this 2nd day of January 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge